**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

MEIDINGER BUILDING OWNER, LLC,
as successor in interest to DOF IV MEIDINGER
TOWER, LLC

      PLAINTIFF

v.              CIVIL ACTION NO. 3:19-CV-859-CHB

COMPUTERSHARE, INC.

      DEFENDANT

**COMPLAINT AND PETITION FOR DECLARATORY RELIEF**

Comes the Plaintiff, Meidinger Building Owner, LLC, as successor in interest to DOF IV Meidinger, LLC ("Plaintiff") for its Complaint and Petition for Declaratory Relief against the Defendant, Computershare, Inc. ("Defendant"), and alleges as follows:

**Parties and Jurisdiction**

1. There is complete diversity of citizenship between Plaintiff, a citizen of Florida and Defendant, a citizen of Massachusetts.

2. Plaintiff is a Delaware limited liability company authorized to conduct business in the Commonwealth of Kentucky with its principal office located in Lake Worth Beach, Florida and is therefore, a citizen of Florida for purposes of determining diversity jurisdiction.

3. Defendant is a Delaware corporation authorized to do business in the Commonwealth of Kentucky with its principle office located in Canton, Massachusetts and is therefore a citizen of Massachusetts for the purposes of determining diversity jurisdiction.

1

4. This Court has jurisdiction because the amount in controversy exceeds the Court's requisite jurisdictional minimum required by U.S.C. § 1332 as the controversy exceeds the sum or value of $75,000, exclusive of interest and cost and the parties are citizens of different states.

## Introduction

5. This action involves the reimbursement of property tax assessments from the Defendant tenant to the Plaintiff landlord. Generally, Plaintiff asserts that Defendant must reimburse Plaintiff for all property taxes paid, pursuant to a Lease that governs the parties' obligations. Defendant asserts that, despite paying the entire amount of property taxes assessed to Plaintiff since 2015, that it is now only obligated to pay the increase over the amount of taxes assessed in 2015. The difference is approximately $80,000 annually.

## Factual Allegations

6. Plaintiff purchased the Meidinger Tower, 462 South Fourth Street, Louisville, Jefferson County Kentucky, pursuant to a Special Warranty Deed between Plaintiff and DOF IV Meidinger Tower, LLC (hereinafter, "Deed") on or about April 24, 2017. *Deed*, attached as Exhibit 1.

7. Prior to Plaintiff purchasing the building, the former owner, DOF IV Meidinger Tower, LLC, had entered into a lease with Defendant on or about November 5, 2014 (hereinafter, "Computershare Lease"). *Computershare Lease*, attached as Exhibit 2. The initial term of the Computershare Lease was to commence on April 1, 2015 and expire on July 31, 2020. *Computershare Lease*, ¶ 3.

8. Pursuant to the terms of the Purchase and Sale Agreement and various amendments between the parties, the former owner of the building, DOF IV Meidinger Tower, LLC, executed

a Lease Assignment and assigned all right, title and interest in all leases in the Meidinger building to Plaintiff on or about April 24, 2017. *Assignment*, attached as Exhibit 3.

9. Pursuant to the assignment, Plaintiff became the new landlord under the Lease Agreement and the various lease amendments.

10. The Lease Amendments, attached a part of Exhibit 2, contained the following affirmations and representations by Defendants:

   a. <u>Tenant Acknowledgement.</u> Tenant acknowledges that Landlord has complied with all of its obligations under the Lease to date[.] *First Amendment to Lease*, ¶ 6, Exhibit 2.

   b. <u>Tenant Acknowledgement.</u> Tenant acknowledges that Landlord has complied with all of its obligations under the Lease to date[.] *Second Amendment to Lease*, ¶ 9, Exhibit 2.

   c. <u>Acknowledgements</u>. Landlord and Tenant each acknowledge that the other party to the Lease has complied with all of its obligations under the Lease to date[.] *Third Amendment to Lease*, ¶ 21, Exhibit 2.

   d. <u>Acknowledgements</u>. Landlord and Tenant each acknowledge that the other party to the Lease has complied with all of its obligations under the Lease to date[.] *Fourth Amendment to Lease*, ¶ 10, Exhibit 2.

11. Each of these acknowledgments was an affirmative representation that Defendant had been paying the correct amounts each year in regards to property taxes and Plaintiffs had no obligations under the Lease to provide any refunds regarding same;

12. On April 20, 2017, prior to the sale, Defendant executed a Tenant Estoppel Certificate in which Defendant represented: "As of the date hereof, Lessee has no claims,

counterclaims, defenses or setoffs against the Lessor from the Lease." *Tenant Estoppel Certificate*, attached as Exhibit 4.

13. Defendant now claims that it, in fact, had a claim or setoff against the prior lessor for certain amounts previously paid for property taxes. Thus, the representations made in the Tenant Estoppel Certificate were false.

14. Said Tenant Estoppel Certificate was signed as an inducement for Plaintiff to purchase the building and assume the leases in the Meidinger building, including but not limited to the Computershare Lease.

15. Said Estoppel Certificate did, in fact, induce Plaintiff to purchase the building and assume the Computershare Lease.

16. Prior to entering into the Lease, Defendant was told that "Meidinger Tower leases are written as Net leases (Base Rent PLUS Operating Expenses outlined in paragraph 7 below)." *Correspondence from Mark Wardlaw to Project Velcro Team ("Wardlaw Correspondence")*, October 2, 2014, attached as Exhibit 5.

17. Prior to entering into the Lease, Defendant was told that the tax and operating expenses for the building ranged from $7.92 per square foot in 2011 to a projected $8.11 per square foot in 2016. *Wardlaw Correspondence*, Exhibit 5.

18. Said quoted operating expenses included all property taxes assessed to the building.

19. Pursuant to the Lease, Defendant is required to pay its *pro rata* share of "all reasonable and customary costs and expenses which Landlord pays or accrues by virtue of ownership, use, management, leasing, maintenance, service, operation, insurance or condition of the Complex during a particular Fiscal year or portion thereof…" *Lease Exh. A*, ¶ 22, page 18, Exhibit 2.

4

20. Said "reasonable and customer costs and expenses" include but is not limited to all real estate taxes assessed to and paid by Plaintiff.

21. Prior to the sale, on information and belief, Defendant paid its pro rata share of all real estate taxes assessed to the former owners.

22. Subsequent to the sale, Defendant paid its pro rata share of all real estate taxes to Plaintiff for 2017 and 2018 but now has refused to pay a certain portion of the real estate taxes for future years.

23. Defendant now claims that it is not contractually responsible for paying its pro rata share of the annual taxes equal to the amounts assessed in 2015.

24. Further, Defendant has refused to reimburse Plaintiff for the approximately $61,644.66 in taxes for 2018.

25. Defendant is contractually obligated to reimburse Plaintiff for its pro rata share of all real estate taxes paid by Plaintiff.

26. Plaintiff has paid all real estate taxes assessed and due and payable.

27. On or about June 29, 2018, Plaintiff made demand upon Defendant for certain amounts still owed and relating to real estate taxes.

28. Despite demand by Plaintiff, Defendant has refused to reimburse Plaintiff for the $61,644.66 in real estate taxes and also has said it would not pay future taxes equivalent to the amounts assessed in 2015.

29. Pursuant to the Lease, Defendants are obligated to reimburse Plaintiff for its costs, including reasonable attorney's fees incurred by Plaintiff in the event that Plaintiff initiates legal action to collect any rent due from Defendant. *See Lease, ¶ 27.11,* Exhibit 2.

## CAUSES OF ACTION

### Count I
### (Declaration of Rights Pursuant to
### Rule 57 of the Federal Rules of Civil Procedure and 28 USC § 2201)

30. The facts and allegations in the previously averred paragraphs are incorporated herein.

31. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.SC. § 2201, et seq., an actual controversy exists, that is justiciable in character, as to which party is responsible for the total amount of the property taxes paid.

32. Pursuant to the terms of the Lease and the understanding of the parties, the Defendant is obligated to reimburse Plaintiff for the total amount of the property taxes assessed.

33. Speedy relief is necessary to preserve and protect the rights of the parties, and judicial interpretation of the terms of the Lease and the judgment sought herein will provide said relief and settle the controversy.

34. Plaintiff is entitled to a declaration from the Court that Defendant is obligated to pay its pro-rata share of all property taxes assessed.

### Count II
### (Breach of Contract)

35. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

36. The Lease is a valid contract supported by adequate consideration.

37. Defendant has knowingly and willfully refused to reimburse Plaintiff for the entire amount of the real estate taxes owed, thereby resulting in an event of default under the Lease.

38. As a direct and proximate cause of Defendant's default under the terms of the Lease, Plaintiff has suffered damages including, with respect to the outstanding real estate taxes

in the amount of at least $61,644.66 and the amount of all delinquency service charges or any other costs fees and charges, as may be applicable pursuant to the terms of the Lease.

### Count III
### (Fraud)

39. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

40. Defendant presented a Tenant Estoppel Certificate on or about April 20, 2017, and represented: "As of the date hereof, Lessee has no claims, counterclaims, defenses or setoffs against the Lessor from the Lease." *Tenant Estoppel Certificate*, attached as Exhibit 4.

41. If Defendant's claim that it is not responsible for all of its pro rate share of property taxes is deemed correct, then the material representations made in the Tenant Estoppel Certificate were false.

42. Defendant either knew or should have known that the representations were false when made or they made the representations recklessly without knowledge of the truth of those representations.

43. Defendant intended Plaintiff to rely upon and act upon those representations prior to purchasing the property and assuming the Meidinger Lease.

44. Plaintiff did, in fact, rely upon and act upon the representations and purchase the property and assumed the Meidinger Lease to its detriment.

45. Pleading in the alternative, as a result of Plaintiff's reliance upon those representations, Plaintiff has suffered and will suffer damages in excess of the jurisdictional amount for this Court in an amount to be determined at trial.

46. The egregious and fraudulent manner in which the foregoing representations were made justify an award of punitive damages pursuant to KRS 411.184 in an amount to be awarded at trial.

### Count IV
### (Negligent Misrepresentation)

47. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

48. The material representations set forth above were false.

49. Plaintiff was actually deceived by these representations, relied upon them and thereby was induced to purchase the property or assume the Meidinger Lease to its detriment.

50. Pleading in the alternative, Defendant was negligent in making the representations describe above and such negligence has damage Plaintiff.

51. As a result of Defendant's negligence, Plaintiff has suffered damages in excess of the jurisdictional minimum for this Court in an amount to be determined at trial.

### Count IV
### (Unjust Enrichment)

52. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

53. The acts complained of above constitute unjust enrichment of Defendant at Plaintiff's expense, in violation of the common law of Kentucky.

54. Through the acts set forth above, Defendant has obtained a benefit from Plaintiff to which Defendant would not have otherwise been entitled.

55. Under the circumstances, it would be unjust for Defendant to retain these benefits.

### Count IV
### (Attorney's Fees)

56. Plaintiff restates and realleges the foregoing paragraphs as if fully set forth herein.

57. Defendant's failure to reimburse Plaintiff for the cost of outstanding Real Estate Taxes constitutes a default under the Lease.

58. As a direct and proximate result of Defendant's default, Plaintiff has been forced to file suit in order to recover its damages, including the cost of the outstanding real estate taxes.

59. Pursuant to the terms of the Lease, Plaintiff is entitled to recover all costs and expenses incurred in connection with this matter, including its reasonable attorney's fees.

WHEREFORE, Plaintiffs demand the following:

A. A trial on all issues of fact herein;

B. Compensatory damages against the Defendant in an amount to be determined at the trial of this matter;

C. Punitive damages against Defendant in an amount to be determined at the trial of this matter;

D. Declaration that Defendant is obligated to reimburse Plaintiff for all of Defendant's pro rate share of real estate taxes paid by Plaintiff;

E. For Plaintiffs' costs herein expended, including reasonable attorney's fees;

F. A judgment declaring the rights of the parties; and

G. For any and all other relief to which Plaintiff may appear entitled.

Dated this 20th day of November, 2019.

Respectfully submitted,

/s/ Bart L. Greenwald
Bart L. Greenwald
bgreenwald@dgeglaw.com
Ambrose K. O'Bryan
aobryan@dgeglaw.com
Duncan Galloway Eagan Greenwald, PLLC
9625 Ormsby Station Road
Louisville, Kentucky 40223
(502) 614-6970
*Counsel for Plaintiff*